LEETH, APPELLANT, *v.* DECORATOR'S MANUFACTURING, INC.,
ET AL.; McCORD, APPELLEE.

[Cite as Leeth v. Decorator's Mfg. (1979),
67 Ohio App. 2d 29.]

(No. 79AP-80—Decided November 23, 1979.)

*Mr. Richard Leeth,* pro se.
*Mr. James McCord,* pro se.

MOYER, J. This matter is before us on the appeal of plaintiff-appellant, Richard Leeth, from a judgment of the Franklin County Municipal Court which found the defendant-appellee, James McCord, not liable on an alleged contract for the sale of a security.

On June 25, 1976, plaintiff executed a "contractor agreement" with a corporation, defendant Decorator's Manufacturing, Inc., of which defendant Ray Gardner was president and defendant-appellee, James McCord, was a director and secretary. (In the subsequent lawsuit, valid service was obtained only on James McCord.)

Although there are other defendants (Decorator's Manufacturing and Ray Gardner), the issue in this appeal is the liability, if any, of defendant James McCord.

Under the contract, Decorator's Manufacturing promised to furnish certain production molds, a training program, and other materials to plaintiff for the manufacture and sale of mold-injected, decorative, Styrofoam wall plaques. Under the contract, Decorator's Manufacturing also guaranteed a

market for the finished product and to issue purchase orders for no less than 500 plaques per month over a 24-month period. The purchase price of the finished product was to be mutually agreed upon, and the corporation maintained control over delivery dates and hours.

Plaintiff, as a contractor under the contract, was prohibited from selling the molds, or finished products, to anyone other than Decorator's Manufacturing. Plaintiff was also required, under the contract, to manufacture the wall plaques in accordance with specifications and instructions provided by Decorator's Manufacturing. Plaintiff paid Decorator's Manufacturing $4,950 for a training program and for the right to receive the molds and materials needed for the manufacture of the wall plaques. Decorator's Manufacturing agreed that, within six months after the date of the agreement, it would return plaintiff's original investment of $4,950, according to a formula based upon plaintiff's production of parts.

Plaintiff received his first knowledge of the business conducted by Decorator's Manufacturing through a newspaper advertisement that Decorator's Manufacturing caused to be published. Defendant Ray Gardner, president of Decorator's Manufacturing, conducted negotiations with plaintiff and signed the contract for the corporation in his official capacity. Plaintiff testified that Ray Gardner allegedly misrepresented a number of market outlets for the products with which he had contracts. Plaintiff further testified that after he had manufactured 10 to 12 plaques, the molds ripped and that he was unable to obtain sufficient non-defective molds from Decorator's Manufacturing. Decorator's Manufacturing went out of business, and plaintiff did not receive repayment of any portion of his $4,950 investment.

Defendant McCord, who is a friend of Ray Gardner, invested $10,000 in Decorator's Manufacturing, in return for which he received 40 shares of the company. McCord also served as a director and secretary of Decorator's Manufacturing from April of 1976 through late September or early October of 1976, when he resigned both positions. He also filed the initial sale of stock for the corporation and the incorporation documents. McCord testified that Ray Gardner gave him a contract which was used by another company with a similar operation, that Gardner had interlined the change of name and

that McCord had the contract typed by his secretary. McCord also testified that he had read the contract and was aware of its contents; however, he was not consulted about the newpaper advertisement to which plaintiff responded. Further, McCord admitted having talked to plaintiff on the telephone; and, plaintiff admitted that their conversation consisted of plaintiff asking McCord whether he was an officer and director of Decorator's Manufacturing and that McCord answered, "Yes."

The contract signed by plaintiff was not registered with the state of Ohio as a security. When a contract was "sold," a salesman's commission was taken from the amount paid by the contractor (in this case, the plaintiff). The balance was deposited to the corporate account and used for operating expenses. Defendant McCord testified that the corporation did not have formal directors' meetings, but that there were discussions "about what was going on." McCord stated that he called Ray Gardner several times to start the marketing of the products, because his (McCord's) investment was related to the selling of the products. McCord also stopped by the offices of Decorator's Manufacturing after he left his law office, on several occasions, to see how the business was going. In addition, McCord's testimony that he had no role in the day-to-day operations of the business is not disputed.

McCord was to receive 40 percent of the profits from the sale of the products in return for his investment. He did not have a contract with Decorator's Manufacturing to manufacture any of the products. Lastly, he also lost his $10,000 investment in Decorator's Manufacturing.

Plaintiff has not set forth an assignment of error, as required by App. R. 16. However, one statement, in his "Statement of the Case," appears to be an assignment of error. It is as follows:

"***The trial court erred in stating that liability could be found only if defendant [McCord] took an active role in the day-to-day operations. This position is manifestly against the weight of the Law."

Because neither party requested findings of fact and conclusions of law, it is not clear whether judgment was rendered against plaintiff for the reason asserted in his brief, *i.e.*, for the reason which is quoted, *supra*. The case was tried to the court;

and, the statetment in the final entry, referring to an absence of an active role in the day-to-day operations of the business by McCord, is only one reason given for the trial court's decision.

Plaintiff relies upon R. C. 1707.43, which gives the purchaser of an unregistered security a remedy for the purchase price of the security against the seller and against "***every person who has participated in or aided the seller in any way in making such sale or contract for sale***." Two questions are presented by this appeal. The first is whether the record in this case supports a factual finding that the transaction in controversy is a sale of an unregistered security. If it is, then the second question is whether McCord's activities, prior to the sale to plaintiff, constitute participation or assistance in the sale of an unregistered security.

The statutory definition of a security is broadly stated in R. C. 1707.01(B) and includes any "investment contract." In the case of *State* v. *George* (1975), 50 Ohio App. 2d 297, this court considered a similar contractual arrangement as that presented in this case and held that the contract in that case was an investment contract as defined in R. C. 1707.01. In *George, supra,* at pages 302-303, we followed a four-point test which had been adopted in the earlier case of *Peltier* v. *Koscot Interplanetary, Inc.* (Franklin Co. Ct. of Appeals No. 72AP-220, November 14, 1972), unreported. Under that test, a contract is an "investment contract," and therefore a "security," when:

" '***(1) an offeree furnishes initial value to an offeror, and (2) a portion of this initial value is subjected to the risks of the enterprise, and (3) the furnishing of the initial value is induced by the offeror's promises or representations which give rise to a reasonable understanding that a valuable benefit of some kind, over and above the initial value, will accrue to the offeree as a result of the operation of the enterprise, and (4) the offeree does not receive the right to exercise practical and actual control over the managerial decisions of the enterprise.' " *George, supra,* at pages 302-303.

All four tests are met by the evidence produced in the record. Plaintiff paid the corporation $4,950; and, a portion of the payment was used for the operations of the corporation, thus, subjecting the payment to the risks of the enterprise. Plaintiff was promised that his initial investment would

benefit him by payments he would receive from the corporation when he manufactured the products. As in *George, supra,* plaintiff herein had the responsibility, under his agreement with Decorator's Manufacturing, to finish and distribute certain materials furnished by Decorator's Manufacturing under conditions set by the corporation, thus, preventing plaintiff from exercising any substantial control over the distribution. Plaintiff was not involved with "the right to exercise practical and actual control over the managerial decisions of the enterprise" (the fourth part of the test). Therefore, all the tests under *Geroge, supra,* are met, and plaintiff's contract with Decorator's Manufacturing is an "investment contract" and, therefore, a "security" under R. C. 1707.01.

The second question is whether McCord is liable under R. C. 1707.43, which provides the remedy for a sale made in violation of R. C. Chapter 1707. In pertinent part, R. C. 1707.43 states as follows:

"* * * The person making such sale or contract for sale, and every person who has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to such purchaser, in an action at law in any court of competent jurisdiction * * *."

There are few cases that have interpreted that portion of R. C. 1707.43. One, however, is the case of *Crane* v. *Courtright* (1964), 2 Ohio App. 2d 125. In that case, this court held that a petition (complaint), containing allegations that the defendant had actively assisted in the sale of certain interests in oil and gas leases by supplying geology information and diagrams of the land, reporting findings and progress of test drillings to the plaintiff, introducing the holder of an oil and gas lease to plaintiff's agent, and encouraging plaintiff to purchase the interest and acting as an intermediary in the sale, should not have been dismissed by the trial court upon the demurrer of defendant.

McCord's participation in the sale of the securities in this case clearly does not meet the level of participation of the defendant in *Crane, supra.*

Another test which has been followed by courts in foreign jurisdictions, and by a Court of Common Pleas in Ohio in the case of *Miller* v. *Griffith* (1961), 92 Ohio Law Abs. 488, is that the signing of an unregistered security by an officer of the cor-

poration makes that officer liable for a securities violation. See, also, Annotation 44 A.L.R. 3d 588, 605-607, Section 11. In the case before us, only defendant Ray Gardner, and not defendant McCord, signed the contract with plaintiff. The cases in other jurisdictions have generally held that the fact that the defendant has an official position with the seller of the unregistered corporate security, by itself, is not sufficient *participation* to render him personally liable. This is particularly true where the person participating is an attorney for the corporation and performs the usual duties expected of an attorney for a corporation, even though the attorney is also a director. See Annotation 44 A.L.R. 3d 588, 611, Section 18[a]; *Hughes* v. *Bie* (Fla. App. 1966), 183 So. 2d 281; Annotation 62 A.L.R. 3d 252.

Although there is authority to the contrary, we believe the better test is that an attorney who is an officer of a corporation and who performs the normal duties of an attorney for the corporation must participate in some other manner in the affairs of the corporation, such as the signing of the investment agreement, to be liable under R. C. 1707.43. The record in the cause before us contains substantial, credible evidence upon which the trial court could have found that McCord's participation in the illegal sale of a security to plaintiff by Decorator's Manufacturing was not sufficient to cause McCord to be liable under R. C. 1707.43. Plaintiff's assignment of error is, therefore, overruled.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE and MCCORMAC, JJ., concur.