GERLACH et al., Appellees,

v.

WERGOWSKI, d.b.a. William G. Wergowski, C.P.A., Inc., Appellant.

[Cite as *Gerlach v. Wergowski* (1989), 65 Ohio App.3d 510.]

Court of Appeals of Ohio,
Hamilton County.

No. C–880657.

Decided Dec. 6, 1989.

*Clark & Eyrich* and *T. Scott Gilligan,* for appellees.

*Carroll, Burke, Henkel, Haverkamp & Smith* and *Steven M. Magas,* for appellant.

*Per Curiam.*

This appeal arises from a fourteen-count complaint filed by plaintiffs-appellees Gordon Gerlach, Richard Truax, Triax Communications Inc.

("Triax"), and Countryside Communications Inc. ("Countryside") against defendant-appellant William Wergowski, d.b.a. William G. Wergowski, C.P.A., Inc. ("Wergowski"), seeking damages and rescission of the sale of unregistered securities. In an entry dated July 15, 1987, the trial court granted partial summary judgment on counts eleven and twelve seeking rescission of purchases of stock of Starburst Concepts, Inc. ("Starburst") and Hospitality Pass, Inc. ("Hospitality"). The remaining counts were disposed of by an entry dated September 22, 1988, and are not at issue in this appeal. Wergowski now appeals only the entry of summary judgment on the two rescission counts.

In June 1982, appellees Gerlach and Truax operated two closely held companies, Triax and Countryside. Wergowski was hired to handle their rapidly expanding business. As their CPA, Wergowski provided appellees with sundry accounting services, including investment advice. In the latter part of 1982, Wergowski met with Gerlach and Truax to review the financial status of Triax. As a result, a $35,000 bonus was to be paid to Gerlach and Truax. In order to limit taxes on this bonus, appellant suggested that Starburst and Hospitality be used as tax shelters. Wergowski eventually provided Gerlach with a copy of Starburst's business plan, which described the tax-shelter benefits of the corporation. Wergowski served as a director and secretary-treasurer of Starburst, and as its accountant. Wergowski was also the accountant for Hospitality. Appellees each decided to invest $30,000 in Starburst and $2,500 in Hospitality Pass.

Appellant's single assignment of error alleges the trial court improperly granted partial summary judgment. The issues raised are whether appellant participated and aided in the sale of unregistered stock,[1] and whether appellant is entitled to immunity under R.C. 1707.431.

In reviewing a trial court's order granting summary judgment, an appellate court must follow the standards of Civ.R. 56 as articulated in *Temple v. Wean*

---

1. The Ohio Securities Act, R.C. Chapter 1707, specifically R.C. 1707.43, provides in pertinent part:

"Every sale or contract for sale made in violation of Chapter 1707. of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, *and every person who has participated in or aided the seller in any way in making such sale or contract for sale,* are jointly and severally liable to such purchaser, in an action at law in any court of competent jurisdiction * * *." (Emphasis supplied.)

R.C. 1707.01 provides, in pertinent part, the definition of "sale":

"(C)(1) 'Sale' has the full meaning of 'sale' as applied by or accepted in courts of law or equity, and includes every disposition, or attempt to dispose, of a security or of an interest in a security. 'Sale' also includes a contract to sell, an exchange, an attempt to sell, an option of sale, a solicitation of a sale, a solicitation of an offer to buy, a subscription, or an offer to sell, directly or indirectly, by agent, circular, pamphlet, advertisement, or otherwise."

*United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274:

"Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, in viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

A review of the record in the instant case demonstrates that there remained no genuine issue of material fact before the trial court and that summary judgment was properly granted.

■ Wergowski argues that a question of fact arose from his deposition testimony that although he could not recall the precise date, he did not discuss the investments with appellees until December 1982. The shares of stock transferred to Gerlach and Truax were dated November 19, 1982, but checks given in payment for the securities were dated December 10, 1982. Although Wergowski's assertion may have created a question of fact concerning the timing of the events culminating in the sale of unregistered securities, we are convinced that there is no question concerning the material fact of Wergowski's participation in the sale.

■ Wergowski's own deposition reveals that he initially suggested Starburst and Hospitality to the appellees,[2] and that he further participated in

---

2. Wergowski admitted introducing Starburst to Gordon Gerlach:
"Q. Gordon, he didn't have a broker?
"A. Right.
"Q. Then how did Starburst Concepts come up?
"A. Well, we were dealing in a short time frame and I told him—he wanted to know if I was aware of any—
"Q. Any tax shelters?
"A. Yes, or any—
"Q. Investments?
"A. I don't like to use the word—I don't like to classify it as a tax shelter. He wanted to know if I knew of any, you know, investments and I told him just those that I am familiar with through my own circles.
"Q. What did he say?
"A. 'Well, like what?' So I told him about Starburst and that's how it came up.
"Q. Was he interested right away?
"A. Yes.
"Q. What did you tell him about Starburst?
"A. You know, primarily, what we have discussed here today about the market situation, the people that are involved, how it's Florida based, what its goals are or its product line.
"Q. What did you tell him about the capitalization?

other sales presentations and in signing the stock certificates as secretary of Starburst. A corporate officer who has not participated in a sale of unregistered securities other than performing his normal duties, for example, as an attorney, may not be liable to the purchaser under R.C. 1707.43, see *Leeth v. Decorator's Mfg., Inc.* (1979), 67 Ohio App.2d 29, 21 O.O.3d 344, 425 N.E.2d 920. But, see, *Miller v. Griffith* (C.P.1961), 92 Ohio Law Abs. 488, 28 O.O.2d 278, 196 N.E.2d 154 (corporate officer liable under R.C. 1707.43 merely for signing stock certificate). We conclude, however, that there is no material issue of fact as to whether Wergowski aided or participated in making the sales of the securities in question, within the meaning of R.C. 1707.43. See *Crane v. Courtwright* (1964), 2 Ohio App.2d 125, 31 O.O.2d 202, 206 N.E.2d 913. The timing of the events in question is not material in light of Wergowski's admission that he introduced the investments to the appellees and signed the certificates.

---

"A. I told him that we were looking for ten tens so that we could approach the secondary venture capital people.

"Q. What was his reaction?

"A. It was positive.

"Q. Did you discuss it subsequent to the first discussion?

"A. Yes."

Wergowski also admitted introducing Hospitality to Gerlach and Truax:

"Q. Let's talk a little bit about Hospitality Pass.

"Did you discuss Hospitality Pass with Gordon?

"A. I don't understand your question. Yes, we discussed it. You mean who introduced the subject?

"Q. Who did introduce the subject?

"A. Well, it was nothing but—I don't want it to be inferred that I did, but unilaterally.

"Q. How did that subject come up?

"A. Remember back when we talked about the ten tens, but we were talking 35 out to fall underneath the reasonableness test.

"You are familiar with corporate tax statute on the reasonableness, compensation and bonuses have to fall within a reasonable range, so based upon Rick and Gordy's salaries, they wanted to know how much can we get away with, how much can we yank out of Tri-Ax and nobody knows how a revenue situation is going to slide so we took a shot at 35 apiece which took him up to 85 grand. I thought I could verify that if it was ever questioned, so when we talked about the ten tens and Gordon said, and again you must remember Gordon always had a blanket proxy from Rick from Day One. They were like twins. Gordy always prefaced by saying whatever he did, Rick would do. We met twice a week many times.

"So, they said, he said, you know, 'We will invest in Starburst.' I says, 'Great,' then he says, 'Can we each take three, each one three?' So they did. Well then, they had the five left, so then it was like, 'What do we do with the other five? Are there any others?' and I said, 'I have one other: My credenza is full of, not full, but there are several of them.' I said, 'I have Hospitality Pass.' The time frame, we are in late December here, so we're not—this is not a time frame in which we have a lot of time. They are trying to get rid of 35 grand, so I showed them Hospitality because it only needed that small amount.

"Q. So they invested, they made a decision at that point or Gordon made a decision at that point to go ahead and invest, I guest [*sic*] $2500 apiece?

"A. I think it was $2500 apiece."

Wergowski also argues that there was a genuine issue of material fact as to whether he was entitled to professional immunity under both the common law and R.C. 1707.431.[3]  Assuming for the purpose of argument only that common-law immunity existed at the time of the transaction or that statutory immunity may be applied retroactively,[4] we hold that Wergowski's participation in the sales exceeded the scope of any common-law immunity attending the performance of his normal duties as an accountant for the appellees or as an officer of Starburst.  See *Leeth, supra*.  Wergowski also exceeded the scope of any statutory immunity available to him as an "attorney * * * whose performance is incidental to the practice of his profession" under R.C. 1707.431.  Accordingly, we conclude, in the absence of any material issues of fact, that the assignment of error is without merit.

The judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

DOAN, P.J., KLUSMEIER and UTZ, JJ., concur.

---

3.  R.C. 1707.431 states in part, that "the following persons shall not be deemed to have effected, participated in, or aided the seller in any way in making, a sale or contract of sale in violation of sections 1707.01 to 1707.45 of the Revised Code:
   "(A) Any attorney, accountant, or engineer whose performance is incidental to the practice of his profession[.]"

4.  R.C. 1707.431 became effective on April 11, 1984, more than one year after the transaction in question.