CRANE, APPELLANT, *v.* COURTRIGHT, APPELLEE.
JAEGER ET AL., APPELLANTS, *v.* COURTRIGHT, APPELLEE.
(Two cases.)*
JAEGER, APPELLANT, *v.* COURTRIGHT, APPELLEE.   (Two cases.)

(Nos. 7449, 7450, 7451, 7452 and 7453—Decided April 21, 1964.)

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Russell P. Herrold, Jr., Mr. John C. Elam, Mr. William W. Ellis, Jr.,* and *Mr. Fred G. Preston,* for appellants.
*Mr. Freeman T. Eagleson, Jr.,* and *Mr. Gary T. Robison,* for appellee.

DUFFEY, J. These are separate appeals from orders of the Common Pleas Court sustaining demurrers to plaintiffs' petitions, and dismissing the actions. The cases have been consolidated for hearing and determination in this court. The issues are identical. The facts stated in this opinion are those alleged in the second amended petition in case No. 7449. The appellant is referred to as the plaintiff and the appellee as the defendant.

The defendant demurred on the sole ground that no cause of action was stated. Accordingly, matters which would be subject to special demurrer, if any, are not considered. See Sections 2309.08 and 2309.09, Revised Code. Further, it should be noted that the briefs of both parties contain many facts which are not found in the pleading. On demurrer, the court is, of course, confined to the facts alleged. Accordingly, in this opinion, only those matters pleaded in the petition will be considered.

John and June Richmond allegedly assigned oil and gas leases in trust to Raymond O. Horne, as trustee. Horne was authorized to sell and assign participating fractional interests in the leases, and their exploitation. Horne "sold and assigned to plaintiff" an undivided 1/32nd interest for $1,500, and issued a "Trust Agreement." Under this agreement, Horne agreed, as trustee, to see that the well was drilled and worked, and that the holders of the interests shared in any profits. The petition alleges that the sale was made "with the active assistance" of the defendant and that the defendant "participated" in the sale. It further alleges that defendant supplied geology information and diagrams of the land, reported findings and progress of test drillings to plaintiff, introduced John Richmond to plaintiff's agent, encouraged plaintiff to purchase the interest, and acted as an "intermediary" in the sale.

The sale transaction is alleged to be in violation of the Ohio Securities Act, Chapter 1707 of the Revised Code. The amended petition alleges a tender of the 1/32nd interest or "security" to Raymond Horne and that he refused the tender, and states that plaintiff "hereby tenders" to John Richmond. Neither Horne nor Richmond has been served and brought within the jurisdiction of the court. The prayer is for judgment of $1,500 with interest and costs.

For purposes of demurrer it must be conceded that the

interest sold is a "security" and that the sale was made in violation of the Ohio Securities Act. See Section 1707.01 (B), Revised Code. A purchaser of such a security is provided with a statutory remedy for restitution of the purchase price. Section 1707.43, Revised Code, provides in part:

"Every sale or contract for sale made in violation of Sections 1707.01 to 1707.45, inclusive, of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person who has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to such purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or of the contract made, for the full amount paid by such purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision."

Definitions are found in Section 1707.01, Revised Code. Subparagraph (C) (2) provides:

" 'Sell' means any act by which a sale is made."

Subparagraph (C) (1) provides:

" 'Sale' has the full meaning of 'sale' as applied by or accepted in courts of law or equity, and includes every disposition, or attempt to dispose, of a security or of an interest in a security. 'Sale' also includes a contract to sell, an exchange, an attempt to sell, an option of sale, a solicitation of a sale, a solicitation of an offer to buy, a subscription, or an offer to sell, directly or indirectly, by agent, circular, pamphlet, advertisement, or otherwise."

Subparagraph (P) provides:

" 'Include,' when used in a definition, does not exclude other things or persons otherwise within the meaning of the term defined."

Transactions subject to Section 1707.43, Revised Code, need not be fraudulent, nor does it follow that the security sold is necessarily worthless. It may in fact be quite valuable. In these respects, compare the remedial provisions of Section 1707.38, Revised Code (violation does not invalidate the security), and Section 1707.41, Revised Code (liability for fraud). Upon failure to register, the statute involved here simply

grants the purchaser the right to a unilateral rescission of the transaction and provides for mutual restitution, *i. e.*, the security for the purchase price. The statute is not, therefore, a penalty provision in the usual sense. It is not even compensatory since the purchaser's right is to obtain restitution of the purchase price, but does not include the right to recover damages.

Defendant contends that tender to the seller is a condition precedent to bringing the action, and that the petition must allege such a tender. However, the statute provides for tender in person or, in the alternative, for a tender ''in *open* court.'' A tender in ''open'' court presupposes that an action is pending. Thus, a tender to the seller in person or, in the alternative, a tender in open court is a condition precedent to a judgment or, in any event, to a satisfaction of a judgment. However, under this statute, tender cannot be a prerequisite to the bringing of the action. Since the tender can be accomplished in open court after the suit is pending, it likewise follows that the tender itself need not be alleged in the petition. Of course, an allegation of ability and willingness to tender is clearly desirable. We need not decide in this case whether that allegation is necessary. The petition here sufficiently alleges both ability and willingness to tender.

It might be noted that the purpose of tender before suit is to insure restitution to the defendant. It is merely one means of affording such protection to the defendant. Its origin lies in the historical practice of the common law courts (King's Bench, Common Pleas and Exchequer), and arose out of the fact that those courts generally refused to grant conditional judgments. See 24 A. & E. Encyclopedia of Law (2d), 621; 31 Michigan Law Review, 696. The chancellor was not circumscribed by such inflexibility, and could and did assure that there would be mutual restitution by simply conditioning his final decree upon the plaintiff's tendering restitution. Even assuming that we must continue to honor such procedural anachronisms of the common law in common law actions, it is certainly competent for the Legislature to provide that in this statutory action a tender in open court is sufficient.

Defendant contends also that the tender must be to John Richmond as the seller. It is argued that the statute requires

tender to the seller in person or tender *to the seller* in open court. We think this contention erroneous for several reasons. The actual statutory wording is "* * * upon tender to the seller in person or in open court * * *." Taken literally and out of context, defendant's interpretation of this clause is plausible. However, it is equally grammatically correct to say that the antecedent of "in open court" is the word "tender," *i. e.,* "tender to the seller in person," or "tender * * * in open court." In our opinion, the context within the statute and the statute's purposes make the latter interpretation the proper one.

Under the statute, liability is imposed individually or "severally" upon a person who has participated in or aided in the sale. Under defendant's interpretation, there would be very little significance left to this imposition of direct liability upon a participant. Surely, too, if a participant is required to make restitution of the purchase price to the plaintiff, then he is a proper person to receive the corresponding restitution of the security. Finally, it ought to be noted that in the last paragraph of the statute it is explicitly provided that a *participant* may tender a refund to the purchaser and thereby avoid liability. If a participant can tender to the purchaser, then the purchaser ought to be able to tender to the participant.

Further, on the facts alleged in this petition, both Raymond Horne and the defendant are "sellers" within the meaning of the statute. Horne is specifically alleged to have sold the securities. As to the defendant, it should be noted that the joint and several liability clause in the statute refers to liability of a "person." The tender clause which follows in the statute refers to the "seller." In arguing that defendant is not a "seller," defendant's counsel would appear to have equated a "seller" with an "issuer." However, under the definition in Section 1707.01, Revised Code, to "sell" means any act by which a "sale" is made. A "sale" includes a solicitation of a sale, a solicitation of an offer to buy, or an offer to sell, and whether any of these are done directly or indirectly. The petition here alleges that defendant provided "active assistance," that he "encouraged" plaintiff to purchase, that he acted as "intermediary" in the sale, etc. We cannot know, of course, whether the plaintiff can prove these allegations. But in our

opinion these allegations are sufficient to charge the defendant as a "seller." A tender to defendant is therefore a sufficient compliance within the statute. On the meaning of "seller," see the holding under the analogous Texas statute in the case of *Brown* v. *Cole,* 155 Tex., 624, 291 S. W. (2d), 704.

The general demurrers are not well taken and the trial court erred in dismissing the petitions. The judgments of the Common Pleas Court are reversed and the causes are remanded for further proceedings according to law.

*Judgments reversed.*

DUFFY, P. J., and TROOP, J., concur.