CINCINNATI BAR ASSOCIATION *v.* YOUNG.

[Cite as *Cincinnati Bar Assn. v. Young* (2000), 89 Ohio St.3d 306.]

(No. 99–2308—Submitted April 11, 2000—Decided July 12, 2000.)

308

312

*Manley, Burke & Lipton* and *Ann L. Lugbill; Clements, Mahin & Cohen, L.L.P.,* and *William E. Clements;* and *Edwin W. Patterson III,* General Counsel, Cincinnati Bar Association, for relator.

*Dinsmore & Shohl, L.L.P., Mark A. Vander Laan* and *Matthew J. Morelli;* and *John H. Burlew,* for respondent.

*Jonathan E. Coughlan,* Disciplinary Counsel, and *Lori J. Brown,* First Assistant Disciplinary Counsel, in support of relator, for *amicus curiae,* Office of Disciplinary Counsel.

---

DOUGLAS, J. In disciplinary cases, this court renders the final determination of facts and conclusions of law. *Ohio State Bar Assn. v. Reid* (1999), 85 Ohio St.3d 327, 708 N.E.2d 193, paragraph one of the syllabus. After a thorough review of the record in this case we adopt the findings of fact of the board. We do not, however, adopt all of its conclusions of law. Specifically, we adopt the board's conclusion that respondent violated DR 1–102(B) (engaging, in a professional capacity, in conduct involving discrimination prohibited by law because of race, color, religion, age, gender, sexual orientation, national origin, marital status, or disability) and 1–102(A)(6) (engaging in conduct that adversely reflects on the lawyer's fitness to practice law) by creating a hostile work environment for Crowe, but, while respondent's conduct was clearly inappropriate, we do not agree with the board's conclusion that respondent's conduct toward Henn and Seta created a hostile work environment.

Moreover, we adopt the board's conclusion that respondent's conduct toward Jennifer Crow violated DR 1–102(A)(6). We also adopt the board's conclusion that respondent's comments to Crowe and Seta violated DR 9–101(C) (stating or implying that he was able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official). However, we reject the board's conclusion that respondent's statement to Henn violated DR 9–101(C).

Each of these disciplinary code violations is addressed and discussed in detail below.

## DR 1–102(B)

This is the first case in which we have been called upon to apply DR 1–102(B) since its adoption in 1994. DR 1–102(B) provides that "[a] lawyer shall not engage, in a professional capacity, in conduct involving discrimination prohibited by law because of race, color, religion, age gender, sexual orientation, national origin, marital status, or disability."

Respondent argues that the board erred in finding that he violated DR 1–102(B) for two reasons. First, respondent argues that DR 1–102(B) requires that the Ohio Civil Rights Commission ("OCRC"), the Equal Employment Opportunity Commission ("EEOC"), or a state or federal court make a preliminary finding of discrimination before an attorney can be charged with a violation of the rule.

Because there was no such finding in this case, respondent argues that the board had no authority to find a violation of DR 1–102(B).

Second, respondent argues that his conduct did not rise to the level of discrimination "prohibited by law." As explained more fully below, we find respondent's first argument to be without merit, but his second argument is well taken with respect to respondent's conduct toward Henn and Seta.

Regarding respondent's first argument, that an attorney cannot be charged with a violation of DR 1–102(B) without a preliminary finding of liability by the OCRC, the EEOC, or a state or federal court, we note that the plain language of DR 1–102(B) does not require such a finding. If such a requirement were intended, then language to that effect would have been incorporated into the rule.

Respondent argues that the language "prohibited by law" implies that a preliminary finding of liability is required. We disagree. The phrase "prohibited by law" is akin to the phrase "illegal conduct" in DR 1–102(A)(3) (a lawyer shall not engage in illegal conduct involving moral turpitude), and we do not require a conviction prior to finding that DR 1–102(A)(3) was violated. See, *e.g.*, *Disciplinary Counsel v. Clifton* (1997), 79 Ohio St.3d 496, 684 N.E.2d 33; *Disciplinary Counsel v. Romaniw* (1998), 83 Ohio St.3d 462, 700 N.E.2d 858; and *Cincinnati Bar Assn. v. Deardorff* (1998), 84 Ohio St.3d 85, 702 N.E.2d 59.

Also undermining respondent's argument that there must be a preliminary finding of discrimination are the differing standards of proof. The burden of proof in civil cases is by a preponderance of the evidence, whereas the burden of proof in disciplinary cases is by clear and convincing evidence. Gov.Bar R. V(6)(J). Therefore, even if an attorney were found liable for discrimination by a preponderance of the evidence in a civil case, the board, and ultimately this court, would still be required to make findings of fact and conclusions of law regarding the alleged discrimination under the clear-and-convincing-evidence standard.

Next respondent argues that the board does not have the authority to make a determination of discrimination. In making this argument, respondent fails to recognize that the board was created by this court to review evidence and make findings and recommendations regarding disciplinary matters. Gov.Bar R. V; *Hecht v. Levin* (1993), 66 Ohio St.3d 458, 461, 613 N.E.2d 585, 588. In any event, assuming *arguendo* that respondent is correct, the board's findings and conclusions do not bind this court, as we render the final determination of the facts and conclusions of law. *Reid, supra.* Thus, it is this court, not the board, that determines whether certain conduct violates discrimination laws, and we are certainly authorized to make such a determination.

Respondent also argues that there will be no time limitation for filing a grievance under DR 1–102(B) unless we hold that a finding of discrimination by the OCRC, the EEOC, or a state or federal court is a prerequisite to finding a

violation of DR 1–102(B). This may be true, but disciplinary proceedings are not barred by or subject to general statutes of limitations. *Columbus Bar Assn. v. Teaford* (1966), 6 Ohio St.2d 253, 255, 35 O.O.2d 418, 419, 217 N.E.2d 872, 873.

Based on the foregoing, respondent's first argument is not well taken. Accordingly, we hold that a finding of discrimination by the OCRC, the EEOC, or a state or federal court is not a prerequisite to the board's finding that an attorney violated DR 1–102(B).

We now move to respondent's second argument with regard to DR 1–102(B). As previously indicated, respondent contends in his second argument that his conduct did not rise to the level of discrimination "prohibited by law."

The applicable state and federal statutes regarding discrimination are R.C. Chapter 4112 and Section 2000e, Title 42, U.S.Code, usually referred to as "Title VII." Our primary focus is on R.C. Chapter 4112 in this case because there is no dispute that respondent employed at least four persons as required by R.C. 4112.01(A)(2),[2] and the record indicates that respondent did not employ the necessary fifteen or more employees required to trigger application of Title VII. Section 2000e(b), Title 42, U.S.Code. If we determine that respondent's conduct in this matter violated R.C. Chapter 4112, then it follows that his conduct was "prohibited by law" and thus violated DR 1–102(B).

R.C. 4112.02 provides that "it shall be an unlawful discriminatory practice: (A) [f]or any employer, because of the * * * sex * * * of any person, * * * to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." The board concluded that respondent violated DR 1–102(B) by creating a hostile work environment for three of his former employees.

Although we determined that Title VII is inapplicable in the instant matter, it has been our practice, where appropriate, to refer to federal case law interpreting Title VII in our analysis of R.C. Chapter 4112. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 202, 421 N.E.2d 128, 131 ("federal case law interpreting Title VII * * * is generally applicable to cases involving alleged violations of R.C. Chapter 4112"). In *Meritor Savings Bank v. Vinson* (1986), 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49, the court held that a plaintiff may establish a violation of Title VII by proving that discrimination based on sex created a hostile or abusive work environment. To establish that respondent created a hostile work environment, relator must show by clear and convincing evidence (1) that respondent subjected

---

2. R.C. 4112.01(A)(2) provides: " 'Employer' includes * * * any person employing four or more persons within the state * * *."

the alleged victim to unwelcome harassment, (2) that the harassment was based on the alleged victim's sex, and (3) that the harassment was sufficiently severe or pervasive as to create a hostile or abusive work environment.[3] See *Meritor*, 477 U.S. at 67–68, 106 S.Ct. at 2405–2406, 91 L.Ed.2d at 59–60, citing *Henson v. City of Dundee* (C.A.11, 1982), 682 F.2d 897. We discuss each of these elements separately with respect to each alleged victim beginning with Crowe.

First, relator must prove that Crowe was subjected to unwelcome harassment. The federal EEOC regulations include verbal comments of a sexual nature in the definition of sexual harassment. Section 1604.11(a), Title 29, C.F.R. Several of respondent's comments to Crowe were clearly of a sexual nature, *e.g.*, telling her that she should be sleeping around.

The record also indicates that Crowe did not welcome respondent's sexual comments. On the contrary, Crowe told respondent that his comments were "inappropriate" and made her "uncomfortable." Crowe also mentioned her boyfriend when respondent suggested that she should be his mistress. And when respondent suggested that he and Crowe go away together for a day to have sex, Crowe said, "That will never happen." These statements by Crowe represent clear indications that the sexual comments were unwelcome. Thus, the first element is met.

Second, relator must show that the harassment was based upon Crowe's sex, *i.e.*, gender. Because respondent is male, Crowe is female, and several of respondent's comments were explicit or implicit proposals of sexual activity, *e.g.*, telling Crowe she should be sleeping around, that she would make a good mistress, and suggesting that Crowe go away with him to have sex, it is reasonable to assume that the harassment was based on Crowe's gender. *Oncale v. Sundowner Offshore Services, Inc.* (1998), 523 U.S. 75, 80, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201, 207–208.

Finally, relator must show that the harassment created a hostile or abusive work environment. The United States Supreme Court emphasized in *Meritor* that not all workplace conduct that has sexual overtones can be characterized as harassment forbidden by the statute. *Meritor*, 477 U.S. at 67, 106 S.Ct. at 2405–2406, 91 L.Ed.2d at 60. Rather, to find a violation of Title VII, the harassment must be "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id.* at 67, 106 S.Ct. at 2405, 91 L.Ed.2d at 60, quoting *Henson*, 682 F.2d at 904.

---

3. There are two additional elements required by case law. One is that the alleged victim belongs to a protected group. In cases of sexual discrimination, however, this requires a simple stipulation that the alleged victim is a man or a woman. *Henson v. City of Dundee* (C.A.11, 1982), 682 F.2d 897, 903. The other additional element is respondeat superior. This element is not relevant in this case because respondent is the alleged harasser.

In *Harris v. Forklift Systems, Inc.* (1993), 510 U.S. 17, 21–23, 114 S.Ct. 367, 370–371, 126 L.Ed.2d 295, 301–303, the Supreme Court reaffirmed this standard and explained that the conduct in question must be evaluated under both an objective and a subjective standard. That is, the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively perceive the environment as hostile or abusive. For the reasons that follow, we determine that relator proved, by clear and convincing evidence, that respondent's conduct created a hostile environment with respect to Crowe under both prongs of *Harris.*

Applying the subjective prong of *Harris* to the evidence in the case at bar, we find that Crowe perceived the work environment as hostile or abusive. Crowe testified that she felt sexually harassed, but felt there was no one to complain to about the situation. She testified that respondent's sexual comments shocked her and made her extremely uncomfortable. This was compounded by the fact that, as respondent's assistant, most of her time at work was spent with him.

Also, Crowe testified that after she saw respondent berate and hit her female coworker, she felt physically threatened when he came very close and started yelling at her. Although this conduct was not sexual in nature, it demonstrated to Crowe that respondent was capable of physically assaulting his employees and added to Crowe's feeling of intimidation.

In regard to the objective prong set forth in *Harris,* the court acknowledged that determining whether a reasonable person would consider an environment to be hostile or abusive is not susceptible of a "mathematically precise test." *Id.* at 22, 114 S.Ct. at 371, 126 L.Ed.2d at 302. The court did, however, provide some guidance by suggesting that the following factors should be considered: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance. *Id.* at 23, 114 S.Ct. at 371, 126 L.Ed.2d at 302–303. The court stressed that this is a non-exhaustive list of factors and explained that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Id.* at 23, 114 S.Ct. at 371, 126 L.Ed.2d at 302.

In light of the foregoing and our consideration of the relevant factors in this matter, we conclude that a reasonable person would have found Crowe's work environment to be hostile and/or abusive. Respondent made frequent sexually harassing comments to Crowe. Crowe worked for respondent for less than twenty hours and during that time she was subjected to numerous sexual comments and advances. Moreover, many of the comments were humiliating, *e.g.,* questioning her virginity, suggesting that he hired her to be his mistress, and

telling another employee to determine what Crowe liked to drink so that he could take her away the following week and take advantage of her sexually.

We find that respondent's comments would cause a reasonable person to feel uncomfortable and those feelings would only be exacerbated by the job duties as respondent's assistant, which required that most of Crowe's time at work be spent with him, either in his office, or in his car while accompanying him on errands. Certainly after witnessing respondent yell at and strike another female employee for not ending a telephone conversation, a reasonable person in Crowe's position would feel physically threatened.

Furthermore, the surrounding circumstances that contributed to the hostility of the environment include respondent's frequent rages and verbal abuse of his employees, all of whom were women. Respondent yelled at his employees in the office nearly every day, often reducing the recipient of his anger to tears. Also significant is respondent's attempt to intimidate Crowe by suggesting that if she did not "behave" the way he wanted, he would give the Board of Commissioners on Character and Fitness a bad reference about her when she applied to take the Ohio Bar Examination. Taking all of the circumstances into account, we conclude that a reasonable person would have found Crowe's work environment to be hostile and/or abusive.

Having found that relator proved by clear and convincing evidence that all of the elements of a hostile work environment were satisfied, we conclude that respondent's conduct toward Crowe constituted discrimination prohibited by law. Accordingly, we find that respondent's conduct violated DR 1–102(B).

We now evaluate the board's conclusion that respondent's conduct with respect to Henn created a hostile work environment. The first element that relator must prove is that Henn was subjected to unwelcome harassment. The federal EEOC regulations define sexual harassment as "Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." Section 1604.11(a), Title 29, C.F.R. During Henn's interview, respondent told her that she was a cute girl and asked her if she had a boyfriend. In addition, after she was hired, respondent hugged Henn on several occasions.

Although in some situations a hug is "physical conduct of a sexual nature," there are other situations where it is not. There is insufficient evidence in the record to indicate that the hugs in this case were of a sexual nature. In fact, the record reflects that respondent hugged Henn after he had yelled at her and she had become upset. Relator failed to prove by clear and convincing evidence that respondent's actions were of a sexual nature rather than just an attempt to console an upset employee. Moreover, the one comment respondent made to Henn is insufficient to constitute harassment.

We find, therefore, that relator failed to prove that respondent's treatment of Henn satisfied the elements of a hostile work environment. Accordingly, we conclude that respondent's conduct toward Henn was not prohibited by law and, thus, we reject the board's conclusion that respondent violated DR 1–102(B) in his conduct toward Henn.

We now turn to the board's conclusion that respondent's conduct with regard to Seta violated DR 1–102(B) by creating a hostile work environment. Seta worked for respondent for approximately three months. During that time, respondent once asked her whether she had a boyfriend. This is the only evidence in the record regarding respondent's conduct toward Seta that could be construed as "verbal conduct of a sexual nature." Clearly, this question, standing alone, fails to satisfy even the first element of a hostile work environment, *i.e.*, that Seta was subjected to unwelcome harassment. Therefore, we reject the board's conclusion that respondent violated DR 1–102(B) in his conduct toward Seta.

## DR 1–102(A)(6)

DR 1–102(A) provides: "A lawyer shall not: * * * (6) Engage in * * * conduct that adversely reflects on the lawyer's fitness to practice law." We adopt the board's conclusion that respondent violated DR 1–102(A)(6) by creating a hostile work environment. Likewise, we adopt the board's conclusion that respondent violated this rule in his conduct toward Jennifer Crow.

The board acknowledged that there was "considerable disagreement" between Crowe's and respondent's descriptions of the physical contact respondent had with Jennifer. However, the board did not explicitly describe the differing accounts nor did it state which account it found to be more credible. In Crowe's version of the incident, respondent struck Jennifer on the forehead with the palm of his hand and then struck her on the left side of her head while taking the telephone away from her.

Respondent's version of the incident is markedly different. He adamantly claims that in reaching to take the telephone from Jennifer, he may have inadvertently touched her head with his finger.

We find Crowe's description of the incident more credible in light of the reactions of all those present. Respondent testified that immediately after the incident he felt "so ashamed of [himself], so embarrassed, [for] bringing disrepute to [his] history and [his] family's history." Respondent also paid Jennifer $7,500 as a result of a confidential mediation settlement. Further, Jennifer cried, told respondent not to hit her again, called security, and initiated court proceedings against respondent. Finally, Crowe felt threatened by respondent and quit her job. All of these facts are more consistent with the incident as described by Crowe. Having determined that the incident happened as Crowe described it, we

adopt the conclusion of the board that respondent's conduct with respect to Jennifer violated DR 1–102(A)(6).

## DR 9–101(C)

DR 9–101(C) provides: "A lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official." The board concluded that respondent violated DR 9–101(C) by suggesting to Crowe, Seta, and Henn that he could improperly influence the Board of Commissioners on Character and Fitness based on his evaluations of them.

With regard to his comments to Crowe and Seta, respondent argues that "[t]here is nothing improper about giving someone a poor recommendation if the person filling out the application feels the [bar] applicant did a poor job." We agree with this assertion; nevertheless, the facts in this case reveal that respondent's comments to Crowe and Seta were not based on job performance. The statement that respondent made to Crowe, *i.e.*, "Remember, you have to turn in your application and I'll make the worst of it for you," was made in response to Crowe's announcement that she quit her employment with respondent. There is no evidence in the record that respondent felt she had performed poorly in her job duties.

Likewise, respondent's comment to Seta, that he would give a bad recommendation to the board regarding her employment, was not based on merit but was apparently made after Seta complained to respondent about making her sit in a chair all day with nothing to do. For the above reasons, we adopt the board's conclusion that respondent violated DR 9–101(C) with respect to Crowe and Seta.

We do not, however, adopt the board's conclusion that respondent's comment to Henn constituted a violation of DR 9–101(C). Respondent told Henn that he would give her a "glowing recommendation" when she applied to take the bar exam, but there is no indication that respondent made this comment based on anything other than merit.

## Sanction

Despite rejecting some of the board's findings of Disciplinary Rule violations, we adopt its recommended sanction in this case because those violations that were proven involved appalling conduct that is serious enough to support the recommendation. Furthermore, the mitigating factors in this case are not sufficient to reduce the sanction for respondent's egregious conduct. Accordingly, respondent is hereby suspended from the practice of law in Ohio for a period of two years, with the second year of the suspension stayed in favor of a one-year probation during which time respondent is required to take at least six hours of

instruction related to professionalism.  Gov.Bar R. X(3)(A)(1)(c).  Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., concurs in syllabus and judgment only.