WILSON, Appellee,

v.

WARD et al.; Stabile, Appellant.

[Cite as *Wilson v. Ward*, 183 Ohio App.3d 494, 2009-Ohio-2078.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 08CA0071–M.

Decided May 4, 2009.

John M. Manos, for appellee.

Harry A. Tipping and Christopher A. Tipping, for appellant.

DICKINSON, Judge.

## INTRODUCTION

{¶ 1} Nicholas Ward and Howard Stabile persuaded William and Sheryl Wilson to invest $120,000 to produce and market a document holder that Ward had created to ease getting through airport security. According to the Wilsons, Ward and Stabile lied to them about the number of other investors, the number of orders that had been placed, and how their money would be used. They sued Ward and Stabile for fraudulent inducement and for violating state securities law. The trial court entered a default judgment against Ward. Following a jury trial on the claims against Stabile, the court granted Stabile a directed verdict on the fraudulent inducement claim. A jury found in favor of the Wilsons on their claim that Stabile aided and abetted Ward in selling securities to them in violation of R.C. 1707.44. Stabile has appealed, raising six assignments of error. This court affirms because the trial court correctly instructed the jury on the burden of proof, the Wilsons properly tendered their shares, Stabile forfeited his argument that the Wilsons' claim is barred by the statute of limitations or the doctrine of laches, the trial court correctly refused to give an instruction on mitigation of damages, the jury's verdict is not against the manifest weight of the evidence, and the trial court correctly denied Stabile's motions for judgment notwithstanding the verdict and for a new trial.

## FACTS

{¶ 2} After Ward lost his driver's license going through airport security in 2001, he developed a clear plastic document holder that a person could wear on a lanyard that would not have to be removed while passing through a metal detector. He obtained a patent for his design and formed a company called Skeye–ID to produce it. He thought he could sell the document holders to companies for use as a promotional device because their names could be printed on the lanyards.

{¶ 3} Ward had worked for a number of years selling computers to businesses. To promote his idea, he contacted Stabile, who he knew had contacts with a number of large corporations. He asked Stabile to promote Skeye–ID in exchange for a 20 percent share in the company. For financing, Ward contacted the Wilsons. Mr. Wilson also sold computers to businesses, and he and Ward had become friends while working on several deals. Ward offered the Wilsons a 15 percent share in Skeye–ID for $120,000.

{¶ 4} According to the Wilsons, while they were deciding whether to invest in Skeye–ID, Stabile also called them and pressured them to invest. He allegedly told them that he and another person were invested at 20 percent and that there was over half a million dollars invested in Skeye–ID. He told them that the company was seeking additional investors so that they could increase production to meet the big orders that they had received. Stabile allegedly told Mrs. Wilson that Skeye–ID had orders from Citigroup, Continental, Austin Travel, and Station Casinos.

{¶ 5} The Wilsons eventually agreed to invest $120,000 in Skeye–ID, but they had only $75,000 available. According to them, they paid $75,000 to Ward, but he did not use their money to produce document holders. Instead, he gave $18,000 to Stabile and used most of the rest to pay his own personal expenses. After a few months, Ward and Stabile pressured the Wilsons for the other $45,000 they had promised. Stabile allegedly told the Wilsons that Skeye–ID had a deal to produce items in China, but they needed $45,000 up front. After the Wilsons told Stabile that they did not have that much, Stabile offered to cover the start-up costs if the Wilsons executed a promissory note for the $45,000. The Wilsons agreed and sent Stabile $45,000 over the next six months.

{¶ 6} Although Stabile used his contacts to promote Skeye–ID, the company earned only a few thousand dollars in income. Ward entered into licensing agreements with a couple of companies, but those agreements failed to produce much income. He eventually sold his patent to another company for $50,000 plus a percentage of whatever proceeds were earned from the patent. Skeye–ID, however, did not receive any additional income.

{¶ 7} The Wilsons received tax documents from Skeye–ID for 2002 indicating that it had a small loss. They did not receive any tax documents for 2003 but were told that it was because the company had not made a profit. The Wilsons received $22,500 in 2004 after Ward sold the patent. According to Mr. Wilson, he started to become suspicious that something was wrong with Skeye–ID in September 2004. He therefore hired a lawyer to look into the company. In the spring of 2005, the Wilsons received Skeye–ID's financial statements and learned that they had been the only investors. In October 2005, the Wilsons wrote Ward and Stabile asking for them to return their investment. In May 2006, the Wilsons sued Ward and Stabile. They dismissed their case after Ward agreed to repurchase their stock.

{¶ 8} In October 2006, the Wilsons sued Ward and Stabile again because Ward had not repaid them. They alleged that Ward had breached their settlement agreement and that Ward and Stabile had engaged in fraud and violated R.C. 1707.44. In January 2007, the Wilsons obtained a default judgment against Ward. Their claims against Stabile proceeded to trial, and a jury awarded them $120,000 on their statutory claim. Stabile has appealed, assigning six errors.

## BURDEN OF PROOF

{¶ 9} Stabile's first assignment of error is that the trial court incorrectly concluded that the Wilsons had to prove their statutory claim by only a preponderance of the evidence. He has argued that to be entitled to rescission of their transaction, the Wilsons had to prove their claim by clear and convincing evidence. In support of his argument, Stabile relies on *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118. In *Cross,* the Ohio Supreme Court held that "[i]n order to maintain an action to rescind a contract on the ground that it was procured by fraudulent representations," plaintiffs must prove their claim "by clear and convincing evidence." Id. at paragraph two of the syllabus.

{¶ 10} Stabile's argument fails because the Wilsons' claim was under R.C. 1707.44(B)(4), not common-law fraud as in *Cross.* See id. at 475, 53 O.O. 361, 120 N.E.2d 118. R.C. 1707.44(B)(4) provides that "[n]o person shall knowingly make * * * any false representation concerning a material and relevant fact, in any oral statement * * * for any of the following purposes: * * * (4) Selling any securities in this state." R.C. 1707.43(A) provides: "Every sale or contract for sale made in violation of Chapter 1707. of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person who has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to such purchaser, * * * for the full amount paid by the purchaser * * *."

{¶ 11} "In civil cases * * * the burden of proof is ordinarily carried by a preponderance of the evidence * * *." *Cincinnati, Hamilton & Dayton Ry. v. Frye* (1909), 80 Ohio St. 289, 88 N.E. 642, paragraph two of the syllabus; see also *Cincinnati Bar Assn. v. Young* (2000), 89 Ohio St.3d 306, 314, 731 N.E.2d 631. When a statute is silent regarding the appropriate burden of proof, this court infers that the common preponderance-of-the-evidence standard applies. *Wilburn v. Wilburn*, 9th Dist. No. 05CA008740, 2006-Ohio-2553, 2006 WL 1409784, at ¶ 9, citing *Felton v. Felton* (1997), 79 Ohio St.3d 34, 41–42, 679 N.E.2d 672. As this court noted in *Wilburn*, " '[h]ad the General Assembly intended that [an alternative] standard apply, it certainly knew how to specify [one].' " Id., quoting *Felton*, 79 Ohio St.3d at 42, 679 N.E.2d 672; see also *Walden v. State* (1989), 47 Ohio St.3d 47, 53, 547 N.E.2d 962 (concluding that "the General Assembly intended to apply the usual preponderance of the evidence standard" when it did not "specify a 'clear and convincing' standard"). Stabile's first assignment of error is overruled.

## TENDER OF SHARES

{¶ 12} Stabile's second assignment of error is that the trial court incorrectly concluded that the Wilsons properly tendered their shares. R.C. 1707.43(A) conditions liability "upon tender to the seller in person or in open court of the securities sold or of the contract made." Stabile has argued that the Wilsons did not comply with that requirement because they did not tender their shares to Ward, either in person or in open court. The Wilsons have argued that they satisfied the requirement because they tendered their shares to Stabile at trial.

{¶ 13} In *Crane v. Courtright* (1964), 2 Ohio App.2d 125, 31 O.O.2d 202, 206 N.E.2d 913, the Tenth District considered the same issue. In that case, Mr. Crane alleged that Mr. Courtright had assisted Mr. Richmond in selling him an interest in a lease. Id. at 128, 31 O.O.2d 202, 206 N.E.2d 913. Courtright argued that R.C. 1707.43(A) "requires tender to the seller in person or tender *to the seller* in open court." Id. at 129, 31 O.O.2d 202, 206 N.E.2d 913. The court, however, rejected his interpretation of the statute. Id. It explained that although Courtright's interpretation was plausible, it was "equally grammatically correct to say that the antecedent of 'in open court' is the word 'tender,' i.e., 'tender to the seller in person,' or 'tender * * * in open court.' " Id. The court noted that under R.C. 1707.43, "liability is imposed individually or 'severally' upon a person who has participated in or aided in the sale." Id. Under Courtright's interpretation, "there would be very little significance left to this imposition of direct liability upon a participant." Id. The court reasoned that "if a participant is required to make restitution of the purchase price to the plaintiff, then he is a

proper person to receive the corresponding restitution of the security." Id. The court also noted that "in the last paragraph of the statute it is explicitly provided that a *participant* may tender a refund to the purchaser and thereby avoid liability." Id. The court concluded that "[i]f a participant can tender to the purchaser, then the purchaser ought to be able to tender to the participant." Id.

{¶ 14} This court agrees with the Tenth District's interpretation of R.C. 1707.43(A) and concludes that the Wilsons satisfied the tender requirement by tendering their shares in Skeye–ID to Stabile in open court. Stabile's second assignment of error is overruled.

## STATUTE OF LIMITATIONS

{¶ 15} Stabile's third assignment of error is that the trial court incorrectly concluded that the Wilsons' claim was not barred by the statute of limitations or the doctrine of laches. R.C. 1707.43(B) provides that "[n]o action for the recovery of the purchase price as provided for in this section * * * shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful."

{¶ 16} "The application of a statute of limitations presents a mixed question of law and fact. Determination of when a plaintiff's cause of action accrues is to be decided by the factfinder. But, in the absence of such factual issues, the application of the limitation is a question of law." *Cyrus v. Henes* (1993), 89 Ohio App.3d 172, 175, 623 N.E.2d 1256, reversed on other grounds by *Cyrus v. Henes* (1994), 70 Ohio St.3d 640, 640 N.E.2d 810.

{¶ 17} Stabile moved for a directed verdict on the Wilsons' statutory claim, arguing, among other things, that it was not filed within the two-year statute of limitations. The trial court denied his motion. Although a question of fact existed regarding when the Wilsons "knew, or had reason to know" that Stabile's actions were unlawful, Stabile did not ask for an instruction on that issue. R.C. 1707.43(B). Accordingly, he has forfeited his argument. See Civ.R. 51(A) ("a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection"). He also failed to raise the doctrine of laches at trial. Stabile's third assignment of error is overruled.

## MITIGATION OF DAMAGES

{¶ 18} Stabile's fourth assignment of error is that the trial court incorrectly failed to instruct the jury on mitigation of damages. "A court

ordinarily should give requested jury instructions where they are correct statements of the law as applied to the facts in the case and where there is evidence from which reasonable minds might reach the conclusion sought by the instruction." *Dunn v. Maxey* (1997), 118 Ohio App.3d 665, 668, 693 N.E.2d 1138. Stabile argues that a mitigation instruction was appropriate because the Wilsons did not do any due diligence before deciding whether to invest in Skeye–ID and did not help to promote the document holders. He also argues that they received $22,500 from the sale of the patent.

{¶ 19} "The general rule is that an injured party has a duty to mitigate and may not recover for damages that could reasonably have been avoided." *Chicago Title Ins. Co. v. Huntington Natl. Bank* (1999), 87 Ohio St.3d 270, 276, 719 N.E.2d 955. The trial court, however, correctly refused to give a mitigation instruction in this case. Stabile's argument that the Wilsons should have done more research before investing in Skeye–ID fails because the Wilsons did not have to prove justifiable reliance. R.C. 1707.44(B)(4) provides that "[n]o person shall knowingly make * * * any false representation concerning a material and relevant fact, in any oral statement or in any * * * written statement, for * * * [s]elling any securities in this state." R.C. 1707.44(B)(4). R.C. 1707.43(A) provides that "every sale * * * made in violation of Chapter 1707 of the Revised Code, is voidable at the election of the purchaser." Accordingly, unlike with a claim for common-law fraud, the Wilsons did not have to prove that they were justified in relying on Stabile's statements to them. See *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus (stating elements of common-law fraud).

{¶ 20} Stabile's argument that the Wilsons could have mitigated their damages by promoting the document holders themselves also fails. "Mitigation is an affirmative defense in Ohio." *Young v. Frank's Nursery & Crafts Inc.* (1991), 58 Ohio St.3d 242, 244, 569 N.E.2d 1034. Stabile did not present any evidence that the Wilsons could have avoided their damages by promoting the document holders themselves. Furthermore, it appears from the record that by the time the Wilsons learned the truth about Skeye–ID, Ward had sold the document-holder patent to another company. The Wilsons, therefore, could not have promoted the document holders if they had wanted to.

{¶ 21} Regarding Stabile's argument that the Wilsons' damages should have been reduced because they received $22,500 from Ward, this court has held that "[t]he fact that [an investor] received a return on her investment * * * does not * * * alter the operation of the statute." *Crater v. Internatl. Resources, Inc.* (1993), 92 Ohio App.3d 18, 25, 633 N.E.2d 1212. In *Crater*, this court rejected the argument that the purpose of R.C. 1707.43 is merely "to put the parties in the

position they had been in prior to the investment." Id. It concluded that Crater could recover the "the full amount" that she paid for securities despite any income she had earned from them. Id. Similarly, the trial court correctly concluded that the Wilsons' damages should not be reduced just because they received $22,500 from Ward. Stabile's fourth assignment of error is overruled.

## MANIFEST WEIGHT

{¶ 22} Stabile's fifth assignment of error is that the jury's verdict was against the manifest weight of the evidence. He has argued that the Wilsons failed to establish that he knowingly made a false representation concerning a material and relevant fact. See *State v. Warner* (1990), 55 Ohio St.3d 31, 564 N.E.2d 18, paragraph two of the syllabus ("R.C. 1707.44(B)(4) and (J) prohibit only affirmative misrepresentation; they do not apply to fraudulent nondisclosure"). He also argues that the Wilsons did not prove that he participated in or aided in the sale of securities.

{¶ 23} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 26, the Ohio Supreme Court held that the test for whether a judgment is against the weight of the evidence in civil cases is different from the test applicable in criminal cases. According to the Supreme Court in Wilson, the standard applicable in civil cases "was explained in *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578." Id. at ¶ 24. The "explanation" in *C.E. Morris* was that " '[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " Id., quoting *C.E. Morris Co.*, 54 Ohio St.2d at 279, 8 O.O.3d 261, 376 N.E.2d 578; but see *Huntington Natl. Bank v. Chappell*, 183 Ohio App.3d 1, 2007-Ohio-4344, 915 N.E.2d 665, at ¶ 17–75 (Dickinson, J., concurring). This court, therefore, must affirm if the jury's verdict "is supported by some competent, credible evidence." *Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 32.

{¶ 24} Mrs. Wilson testified that in April and May 2002, Stabile called her several times to ask if Mr. Wilson and she were going to invest in Skeye–ID. She said that Stabile told her that Ward, another person, and he had invested money in Skeye–ID and that the three of them had invested a total of over half a million dollars. He said that they needed the Wilsons to come in as second-level investors "because they had orders that were in place and being filled." He told her that the biggest order was from CitiGroup for over a million units. He also told her that Skeye–ID had orders from Austin Travel, Continental, and Station Casinos. Mrs. Wilson said that she invested in Skeye–ID based on what Stabile told her.

{¶ 25} Mr. Wilson testified that Stabile also pressured him to invest in Skeye–ID. According to Mr. Wilson, Stabile "confirmed that the business was doing very well, they had ongoing orders with a company called Austin Travel, they were going to order fifty thousand a month." Stabile told him that he had invested $160,000 and that Ward had invested $280,000 in Skeye–ID. He allegedly told Mr. Wilson that "they needed me to invest my hundred and twenty thousand so they could ramp up production for the CitiGroup order" because "they were going to sell tens of millions" of the document holders to CitiGroup.

{¶ 26} Mr. Wilson also testified that after he sent $75,000 to Skeye–ID, Stabile called him about the other $45,000 he had promised. He said that Stabile told him the same thing as Ward had "about ramping up the production in China and getting the product made and sending money up front to get the product actually started." When Mr. Wilson told Stabile that he did not have $45,000 at that time, Stabile offered "[to] front the money to Skeye–ID" if Mr. Wilson would pay him back in six months. Mr. Wilson further testified that after he finally received financial information about Skeye–ID, he "realized that my wife and I were the only investors in the company * * * and that there were no profits or no sales."

{¶ 27} This court concludes that there was competent, credible evidence that Stabile made false representations to the Wilsons about the number of other investors in Skeye–ID, about the number of customers Skeye–ID had, and about the number of document holders Skeye–ID was selling. There was also competent, credible evidence that Stabile aided Ward in convincing the Wilsons to purchase shares of Skeye–ID. Stabile's fifth assignment of error is overruled.

## POSTJUDGMENT MOTIONS

{¶ 28} Stabile's sixth assignment of error is that the trial court incorrectly denied his motions for judgment notwithstanding the verdict and for a new trial. He has not raised any new arguments, but has merely incorporated "the arguments listed above * * * by reference." He has argued that "[i]n committing the legal errors and abuses of discretion outlined [in his other assignments of error], the Trial Court abused its discretion in not granting [his] Motion for Judgment Notwithstanding the Verdict and/or Motion for New Trial." This court concludes that since the arguments Stabile raised in his other assignments of error are without merit, the trial court properly denied his motions for judgment notwithstanding the verdict and for a new trial. Stabile's sixth assignment of error is overruled.

## CONCLUSION

{¶ 29} The trial court correctly instructed the jury on the burden of proof under R.C. 1707.44(B)(4), the Wilsons properly tendered their shares in Skeye–

ID, Stabile forfeited his argument that the Wilsons' claim is barred by the statute of limitations or the doctrine of laches, the trial court correctly refused to instruct the jury on mitigation of damages, the jury's verdict is not against the manifest weight of the evidence, and the trial court properly denied Stabile's motions for judgment notwithstanding the verdict and for a new trial.  The judgment of the Medina County Common Pleas Court is affirmed.

Judgment affirmed.

MOORE, P.J., and BELFANCE, J., concur.