NOT DESIGNATED FOR PUBLICATION

No. 121,621

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LAUREN E. RUWART,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; JENNIFER L. MYERS, judge. Opinion filed April 30, 2021.
Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Nicholas Campbell*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., SCHROEDER and WARNER, JJ.

PER CURIAM: After Defendant Lauren E. Ruwart pleaded guilty to aggravated robbery for a carjacking gone awry, the Wyandotte County District Court made a finding she used a deadly weapon—the car itself—to commit the crime. The finding requires Ruwart to register and report as a violent offender under the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq., for 15 years. On appeal, Ruwart contends she has been subjected to the requirements of KORA without constitutionally sufficient due process. We find no due process violation in this case and affirm the district court's decision.

1

CASE HISTORY

Given the issue on appeal, the circumstances of Ruwart's crime are largely irrelevant, apart from offering a factual context for the legal argument. In February 2019, Ruwart attempted to steal a sedan the owner parked with the engine running next to a gas pump at a convenience store. Ruwart jumped into the driver's seat just as the owner finished pumping gas. As Ruwart prepared to drive away, the owner interceded by grabbing the handle of the driver's side door. Ruwart kept going, dragging the owner several feet before she let go. The owner had minor injuries to her face and hands as a result. A nearby motorist witnessed the incident and followed Ruwart, relaying information to an emergency dispatcher. When Ruwart pulled into another convenience store, police officers intercepted and arrested her.

The State charged Ruwart with aggravated robbery for forcibly taking the car and with interference with a law enforcement officer for making false statements after she was stopped. Ruwart, through her lawyer, worked out an agreement with the State to plead guilty to the aggravated robbery charge with a recommendation for a prison sentence of 32 months, reflecting a downward durational departure from the presumptive guidelines punishment. The State also agreed to dismiss the second charge, and Ruwart agreed to pay restitution to the owner of the car. The agreement did not address KORA.

At a hearing in late May 2019, Ruwart pleaded guilty consistent with the agreement. The prosecutor dismissed the other charge and announced the recommended sentence. The prosecutor then asked the district court to make a finding that Ruwart used the car as "a deadly weapon" in committing the aggravated robbery, triggering KORA registration and reporting requirements. See K.S.A. 2020 Supp. 22-4902(e)(2). Ruwart's lawyer objected and disputed whether a motor vehicle could be considered a deadly weapon under KORA. The lawyer requested the opportunity to research the issue. The

2

district court announced it would tentatively make a finding Ruwart used a deadly weapon but would honor a defense request to reconsider the point at sentencing. The district court accepted Ruwart's plea and adjudged her guilty of aggravated robbery.

At the sentencing hearing about a month later, Ruwart's lawyer again objected to the KORA finding and reiterated his view the car should not be treated as a deadly weapon. But the lawyer offered no legal authority supporting the argument. The district court again found Ruwart used a deadly weapon, making her a "violent offender" required to register and report under KORA. The district court imposed the recommended prison sentence of 32 months followed by postrelease supervision for 36 months. Ruwart has appealed.

LEGAL ANALYSIS

On appeal, Ruwart contends she was afforded constitutionally insufficient due process in conjunction with the district court's deadly weapon finding and, therefore, has been improperly required to comply with KORA. Ruwart launches several distinct due process challenges. She does not (and could not) dispute the prison sentence and the term of the postrelease supervision the district court imposed. See K.S.A. 2020 Supp. 21-6820(c)(2).

Ruwart did not present any due process arguments to the district court. Although appellate courts typically need not consider issues raised for the first time on appeal, they have the authority to do so. We exercise that authority here. The due process challenges do not depend on any disputed facts and present questions of law.

Broadly, the Due Process Clause of the Fourteenth Amendment to the United States Constitution precludes the government from "depriv[ing] a person of a property right or a liberty interest without affording that person the opportunity to be heard in a

meaningful way and at a meaningful time to avert a wrongful deprivation of that right or interest." *State v. Gonzalez*, 57 Kan. App. 2d 618, Syl. ¶ 1, 457 P.3d 938 (2019); see *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (The Due Process Clause "at a minimum" requires that "deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). Notwithstanding its fundamental character, "[c]onstitutional due process is an especially elastic concept in that the protections required vary depending upon the importance of the specific property right or liberty interest at stake." *Gonzalez*, 57 Kan. App. 2d 618, Syl. ¶ 2.

A person asserting a due process violation must identify a protected liberty interest or property right that has been impaired. Given our resolution of Ruwart's appeal, we do not delve deeply into this aspect of the issue.

After serving any prison sentences for the crimes triggering KORA obligations, offenders are required to register with a designated law enforcement agency, typically the sheriff, in the counties where they live, work, and attend school. Offenders must provide an array of identifying information in an initial registration, most of which is then available for public inspection and is posted in a publicly accessible data base the Kansas Bureau of Investigation maintains on the Internet. They are then required to report quarterly to each local agency, complete a form confirming their identification information, and pay an administrative fee to each agency. They must also notify any local agency of a change of residence, employment, or school attendance within three days. Depending on the underlying crime of conviction, offenders must continue registering and reporting for no less than 15 years and in some cases for the rest of their lives. But KORA does not restrict where an offender may live, work, or travel; nor does it

4

permit government agents to make warrantless searches of offenders or their homes. The Kansas Supreme Court has held those requirements do not amount to punishment and entail civil measures advancing identifiable public safety objectives. See *State v. Meredith*, 306 Kan. 906, 909-10, 399 P.3d 859 (2017); *State v. Petersen-Beard*, 304 Kan. 192, 196-97, 377 P.3d 1127 (2016). We, therefore, reserve judgment on whether KORA registration and reporting requirements impinge on protected liberty interests.

When offenders register quarterly, they have to pay a $20 fee to each agency. Those fees could be as much as $60 each quarter. Over the course of the 15-year term of registration that Ruwart must abide, the fees would be between $1,200 and $3,600. That amount of money cannot be characterized as de minimis and represents a constitutionally protected property right affected by KORA. Ruwart, therefore, has satisfied the first part of her constitutional due process claim.

Ruwart then argues KORA violates the Due Process Clause because the statutory language includes no express provision giving individuals the opportunity to dispute their designation as ostensible violent offenders required to register and report. But, by the same token, KORA does not preclude some form of due process hearing on a district court's consideration of a deadly weapon finding. The statutory silence supports Ruwart's argument for an opportunity to be heard if for no other reason than as a matter of constitutional avoidance. See *Johnson v. U.S. Food Service*, 312 Kan. 597, 602-03, 478 P.3d 776 (2021) (Courts should prefer a plausible interpretation of a statute that avoids a constitutional defect, so long as it does not conflict with the express language or an obviously contrary legislative intent.). We, therefore, assume Ruwart had a protected right to be heard on the district court's deadly weapon finding.

The record shows Ruwart had an opportunity to speak to the point. The district court actually afforded her two chances—first at the plea hearing and later at her sentencing. Both times she was represented by a lawyer who raised and argued the deadly

weapon issue. We need not outline the metes and bounds of the process due an ostensible registrant in similar circumstances. Ruwart's lawyer did not ask for and, therefore, was not denied the opportunity to present witnesses or other evidence about the underlying circumstances, and he did not otherwise challenge the facts themselves. The lawyer posited that a car could not be a deadly weapon under KORA. Ruwart received the due process she sought, and she cannot now complain she was denied something she never requested.

To wrap up this aspect of the issue, we mention the Kansas Supreme Court's decision in *State v. Juarez*, 312 Kan. 22, 470 P.3d 1271 (2020), its most recent discussion of KORA and due process rights. In that case, Juarez argued he was denied the process he was constitutionally due because the district court informed him of his obligation to register and report under KORA at his sentencing hearing rather than earlier at his plea hearing, as required by K.S.A. 2019 Supp. 22-4904(a)(1)(A). Here, we deal with the constitutional protections attendant to a district court's factual finding necessary to impose the registration and reporting obligations in the first instance—a different aspect of KORA arguably calling for a different measure of due process. Moreover, *Juarez* produced no majority opinion: there was a plurality opinion, two concurring opinions, and a dissenting opinion in which a second justice joined. Those judicial shards cannot be readily pieced together into a due process rule governing or even inferentially informing the question before us.

Ruwart next argues KORA deprives her of due process because the statutory scheme includes no stated burden of proof for the district court's deadly weapon finding under K.S.A. 2020 Supp. 22-4902(e)(2). As we have said, the Kansas Supreme Court has held KORA registration and reporting is a civil regulatory scheme intended to promote public safety. Given that purpose, the customary civil standard of proof by a preponderance of the evidence should be inferred and applied. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); *Falvey v. Zurolo*, 130 Conn.

6

App. 243, 255, 22 A.3d 682 (2011); *Wilson v. Ward*, 183 Ohio App. 3d 494, 500, 917 N.E.2d 821 (2009); *State v. Ford*, No. 119,328, 2019 WL 3242420, at *5 (Kan. App. 2019) (unpublished opinion), *rev. denied* 311 Kan. 1048 (2020); Presumably had the Legislature intended something other than a default to a preponderance standard, it would have said so. See, e.g., K.S.A. 2020 Supp. 23-2208(b) (statutory presumption of paternity may be rebutted "only by clear and convincing evidence"); K.S.A. 2020 Supp. 59-29a07(a) (statute civilly committing sexually violent predators for treatment explicitly requires proof beyond a reasonable doubt).

Ruwart points out that a comparable provision in KORA defining sex offenders includes a subsection requiring defendants to register and report if the district court finds their crimes of conviction "to have been sexually motivated." The subsection expressly directs that sexual motivation be proved "beyond a reasonable doubt." K.S.A. 2020 Supp. 22-4902(c)(18). Ruwart says the rule of lenity requires the more stringent standard in K.S.A. 2020 Supp. 22-4902(c)(18) be read into K.S.A. 2020 Supp. 22-4902(e)(2) and, therefore, should apply to her. The argument misappropriates the rule of lenity. The rule requires that a genuinely ambiguous *criminal* statute be construed in favor of the defendant. See *State v. Coman*, 294 Kan. 84, Syl. ¶ 5, 273 P.3d 701 (2012) ("Under the rule of lenity, criminal statutes must be strictly construed in favor of the defendant."); *State v. Baker*, 56 Kan. App. 2d 335, Syl. ¶ 3, 429 P.3d 240 (2018). Similarly, the rule applies when two conflicting *criminal* statutes are equally applicable to a defendant; the defendant receives the benefit of the more advantageous statute. See *State v. Chavez*, 292 Kan. 464, 467, 254 P.3d 539 (2011).

As we have already explained, the Kansas Supreme Court considers KORA to be a civil measure. That conclusion precludes using the rule of lenity to resolve a statutory ambiguity or conflict. In addition, the silence in K.S.A. 2020 Supp. 22-4902(e)(2) does not create an ambiguity, given the recognized default rule on burden of proof for civil statutes. And the two subsections of KORA obviously apply to different groups—sex

offenders and violent offenders. That, too, would make the rule of lenity inapplicable. The disparate burdens of proof do treat some sex offenders differently (and more favorably) than some violent offenders under KORA, at least suggesting a possible equal protection problem. But Ruwart has not made such a suggestion to us, so we venture no further down that constitutional path.

Finally, Ruwart invokes *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and later cases relying on *Apprendi* that hold facts used to enhance sentences beyond their statutory maximums must be proved to a jury consistent with the Sixth and Fourteenth Amendments to the United States Constitution. Accordingly, Ruwart says she cannot be required to comply with KORA because a jury did not find she used a deadly weapon. Ruwart acknowledges this argument fails, since the Kansas Supreme Court does not consider the KORA registration and reporting duties to be criminal penalties. See *Meredith*, 306 Kan. at 909-10. And in *State v. Huey*, 306 Kan. 1005, 1010, 399 P.3d 211 (2017), the Kansas Supreme Court specifically refused to apply *Apprendi* to the deadly weapon finding absent some clear evidence the Legislature intended KORA registration to be punitive in the manner of a criminal sentence. Ruwart calls for that authority to be overruled. We, of course, cannot heed her call. See *State v. Dawson*, 43 Kan. App. 2d 800, 803, 231 P.3d 582 (2010) (Court of Appeals obligated to follow Kansas Supreme Court precedent).

All of Ruwart's due process arguments come with a patina of harmlessness we cannot help noticing. Ruwart never offers a legal or factual explanation as to why the car could not be considered a deadly weapon in this case. Typically, procedural due process violations demand no remedy if they cause no actual prejudice—they may be treated as harmless. See *Brecht v. Abrahamson*, 507 U.S. 619, 622-23, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) (due process violation); *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (federal constitutional violations commonly subject to review for harmless error); *State v. Lloyd*, 308 Kan. 735, 740, 423 P.3d 517 (2018) (due

process violation). Here, Ruwart has outlined an ostensible due process violation in the abstract without tying the error to any tangible prejudice to her. Just as the district court was left hanging as to why precisely Ruwart believed the car she took could not be a deadly weapon, so are we. See *State v. Charles*, 304 Kan. 158, 172, 372 P.3d 1109 (2016) (recognizing motor vehicle as deadly weapon supporting aggravated battery conviction), *overruled on other grounds by Huey*, 306 Kan. 1005; *State v. Whittington*, 260 Kan. 873, 878, 926 P.2d 237 (1996) (motor vehicle may be deadly weapon sufficient to support aggravated battery charge). We do not, however, rest our decision on harmless error.

Affirmed.